UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LUIS ANGEL SALAMAN, | : | |
|     Plaintiff, | : | CASE NO. 3:19-CV-577 (MPS) |
| | : | |
| v. | : | |
| | : | |
| CITY OF NEW HAVEN, et al., | : | |
|     Defendants. | : | May 23, 2019 |

**INITIAL REVIEW ORDER**

On April 17, 2019, the plaintiff, Luis Angel Salaman, a state prisoner currently confined at the Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, filed a civil complaint *pro se* and *in forma pauperis* against the City of New Haven, Connecticut, the New Haven Police Department ("NHPD"), the State's Attorney's Office for the judicial district of New Haven, and nine NHPD officials in their individual and official capacities: Chief Anthony Campbell, Officer James Murcko, Officer Joseph Galvan, Officer Garry Monk, Detective Luis Lopez, Sergeant Sean Maher, Sergeant Rose Dell, Sergeant Carlos Maldonado, and Lieutenant Racheal Cain. ECF No. 1, ¶¶ 4-16. The plaintiff raises a number of constitutional claims stemming from his arrest in New Haven on April 22, 2016. *Id.* at ¶¶ 100-09. He seeks monetary, injunctive, and declaratory relief. *Id.* at ¶¶ 110-16. For the following reasons, the complaint is dismissed in part.

I.     Standard of Review

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant

who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic*, 550 U.S. at 556). Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II. <u>Factual Allegations</u>

On April 22, 2016, at around 7:00 p.m., the plaintiff was traveling west on Putnam Street in New Haven in his red Saab. ECF No. 1, ¶¶ 17-18. When he stopped at a stop sign at the intersection of Putnam Street and Howard Avenue, he noticed a police cruiser operated by Officer Murcko parked on a driveway on Howard Street. *Id.* at ¶ 17. When the plaintiff proceeded onto Howard Street from the intersection, he noticed Murcko following him in his cruiser. *Id.* at ¶ 18. Murcko activated his lights and siren, and the plaintiff pulled over on Liberty Street. *Id.* at ¶ 19. He sat in his car for several minutes, but Murcko did not exit his cruiser. *Id.* The plaintiff then noticed another

2

police cruiser driven by Officers Monk and Galvan approaching him at an alarming speed. *Id.* at ¶¶ 19-20. The plaintiff did not feel safe and sped off in fear that the officers were going to attack him. *Id.* at ¶ 21. The plaintiff and the officers then engaged in a pursuit throughout the streets of New Haven. *Id.* at ¶¶ 22-26. At various times, the police cruisers crashed into the plaintiff's Saab and caused him to drive into the oncoming traffic lane. *Id.* at ¶¶ 23-25. The plaintiff feared that the officers were trying to kill him. *Id.* at ¶ 24. Eventually, Murcko crashed his cruiser into the rear left side of the plaintiff's Saab, causing it to spin out of control and come to a stop on Long Wharf Drive. *Id.* at ¶¶ 26-27.

After the Saab had come to a stop, the officers ordered the plaintiff at gunpoint to exit his vehicle. ECF No. 1, ¶ 27. The plaintiff complied by exiting his vehicle and lying face down on the ground. *Id.* Galvan placed him in handcuffs, searched his person, and then placed him in Murcko's police cruiser. *Id.* At the time, the plaintiff was in a lot of pain and had difficulty breathing. *Id.* As he sat down in the cruiser, the plaintiff complained to another officer that that he was in pain and could not breathe. *Id.* at ¶ 28. He then heard Murcko say, "I should mace you, you motherfucker," and Murcko slammed the cruiser door. *Id.* Murcko then opened his driver door and closed all of the windows in the cruiser, which caused the plaintiff to become lightheaded. *Id.*

The plaintiff again complained to an ambulance technician that he was not feeling well and had difficulty breathing, and the technician cracked open the windows in the cruiser. ECF No. 1, ¶ 29. A short time later, however, Murcko closed the windows again. *Id.* at ¶ 30. When the technician attempted to open the windows a second time, Murcko instructed him not to touch the windows, but the technician insisted that they

3

take the plaintiff out of the car.  *Id.*  Murcko then became upset, opened the back door, and told the plaintiff to get out of the car.  *Id.*

Murcko walked the plaintiff to a nearby intersection where Sergeant Maher was present.  ECF No. 1, ¶ 31.  He then searched the plaintiff a second time and, during the pat down, grabbed the plaintiff's testicles and squeezed them so hard that it caused the plaintiff to cry out loud in pain.  *Id.*  Murcko said, "What's this?" and the plaintiff responded, "Why [are] you doing this?  You can't touch me there at all."  *Id.*  Murcko told him to "shut the fuck up" and then instructed the ambulance technician to take him away.  *Id.*

The plaintiff was taken to Yale New Haven Hospital, where he was evaluated and given medical treatment, and then transported to the New Haven police station.  ECF No. 1, ¶ 33.  He was released on bail that same night.  *Id.*

On April 25, the plaintiff obtained a ten-page police report written by Galvan and noticed several factual inaccuracies.  ECF No. 1, ¶¶ 34-37.  Four days later, on April 29, the plaintiff appeared in state court for a preliminary hearing.  *Id.* at ¶ 38.  There, he filed a motion for discovery of any video footage taken during the arrest, including traffic camera footage, and the court ordered the State to preserve any such footage.  *Id.* at ¶¶ 39, 44.  The plaintiff asked his attorney to review the footage, which he believed would show that the officers were untruthful in their account of the pursuit.  *Id.* at ¶¶ 41-44.  The plaintiff later fired his attorney, and the court appointed Special Public Defender Beth A. Merkin to represent him.  *Id.* at ¶ 46.  He briefed Merkin on the court's order for the preservation of the videos and told her that he believed the NHPD officers were targeting him.  *Id.* at ¶ 47.

On October 7, 2016, the plaintiff filed a civilian complaint with the NHPD Internal Affairs Unit for police misconduct during his arrest. ECF No. 1, ¶ 42. He received a letter on October 19 from Lieutenant Cain stating that an investigation into his allegations had been opened, and that Sergeant Maldonado would be in contact with the plaintiff regarding its status, but the plaintiff was never contacted regarding his complaint. *Id.*

On December 19, 2016, the plaintiff obtained from Merkin the full police reports from Officers Galvan and Murcko and a Uniform Police Crash Report filed by Sergeant Maher. ECF No. 1, ¶ 48. Again, the plaintiff noticed several untruthful statements in the reports. *See id.* at ¶¶ 49-59.

On January 9, 2017, the plaintiff posted bail and was released from custody. ECF No. 1, ¶ 61. A short time later, he went to the NHPD to check on the status of his civilian complaint because no one from the NHPD had ever contacted or interviewed him. *Id.* A clerk there told him that Lieutenant Cain would be contacting him, but that never occurred. *Id.* The plaintiff tried to contact Cain the following month but was unsuccessful. *Id.* at ¶ 62. When he went to the NHPD a second time to check on the status of the complaint, the clerk there handed him a letter written by Maldonado stating that the Internal Affairs Unit was closing his complaint because the claims stated therein were unfounded, and the Unit determined that no policies were violated. *Id.*

The plaintiff informed Attorney Merkin of the outcome of the civilian complaint. ECF No. 1, ¶ 64. During their discussions, the plaintiff told Merkin that he recalled Officer Galvan waving something in his hand on the night of his arrest and shouting,

"Call Lopez. Tell him we got him." *Id.* at ¶ 67. Merkin also handed the plaintiff another summary report written by Maldonado in which he stated that he had reviewed the police radio transmission logs from the night of the arrest. *Id.* at ¶¶ 65, 68. In one of those logs, Sergeant Maher asks why they were pursuing the plaintiff's car, and someone responds that it was related to a drug investigation and that Detective Lopez "wants him." *Id.* at ¶ 71. In his police report from April 22, 2016, Officer Galvan stated that the officers were pursuing the plaintiff because his Saab "did not have a proper illuminated marker plate," in violation of Connecticut General Statutes § 14-18, but omitted any reference to a drug investigation. *Id.* at ¶¶ 73-74. Maldonado also stated in his report that Lopez had an interest in the plaintiff's vehicle as part of a narcotics investigation. *Id.* at ¶ 76.

The plaintiff believes that Lopez had targeted him for arrest on April 22, 2016 because (1) at that time, he was awaiting trial for an unrelated criminal case from 2014 in which Lopez was the arresting officer, and (2) he had previously dated Lopez's ex-girlfriend. ECF No. 1, ¶ 77. The plaintiff believes that Lopez directed Murcko and Galvan to attack him on April 22, 2016. *Id.* at ¶ 78.

The plaintiff later learned from Sergeant Dell, who specializes in accident reconstruction, that traffic camera footage is only preserved for two weeks, and because the plaintiff did not file his civilian complaint until October 2016, there was no available footage of the arrest. ECF No. 1, ¶ 84. However, the state court ordered the footage preserved on April 29, 2016, just seven days after the arrest. *Id.*

In connection with his arrest, the plaintiff was charged with assaulting a police officer, in violation of Connecticut General Statutes § 53a-167c, but this charge was later dismissed. ECF No. 1, ¶ 85. On February 21, 2018, he pleaded guilty to the lesser

included offense of interfering with an officer, in violation of Connecticut General Statutes § 53a-167a, and possession with intent to sell a controlled substance, in violation of § 21a-277(a). *State v. Salaman*, No. N23N-CR16-0166479-S (Conn. Super. Ct. Feb. 21, 2018). On May 17, 2018, the state court sentenced him to two years in prison. *Id.*

On July 25, 2018, the plaintiff filed a second civilian complaint with the NHPD Internal Affairs Unit. ECF No. 1, ¶ 87. This time, he complained that Maldonado covered up the misconduct of Murcko, Monk, Lopez, Maher, and Dell. *Id.* Two Internal Affairs officers interviewed the plaintiff on November 19, 2018. *Id.* at ¶ 88. At the interview, one of the officers told the plaintiff that she was going to close the case because the plaintiff had already raised the same issues in his first civilian complaint. *Id.* The plaintiff expressed his disagreement, stating that the second complaint concerned Maldonado's cover-up and new allegations of misconduct against Lopez, Dell and the other officers. *Id.* at ¶¶ 89-95. Nevertheless, the Internal Affairs Officer stated that she was going to close the complaint without doing any additional investigation. *Id.* at ¶ 96.

III. <u>Analysis</u>

As best as the Court can surmise from his complaint, the plaintiff raises the following constitutional claims: (1) Murcko, Galvan, Monk, and Maher subjected him to excessive force, in violation of his Eighth Amendment protection against cruel and unusual punishment (¶¶ 100-03); (2) Lopez retaliated against him for exercising his First Amendment right to free speech by electing a trial on his 2014 criminal case (¶ 104); and (3) all defendants violated his First, Eighth, and Fourteenth Amendment rights by failing to properly investigate the circumstances of his arrest and civilian complaints (¶¶ 105-

08).  The Court will permit his excessive force claims to proceed but dismiss the remaining claims.

   A.  Excessive Force

The plaintiff first claims that Murcko, Galvan, Monk, and Maher subjected him to excessive force, in violation of the Eighth Amendment, on the night of his arrest.  ECF No. 1, ¶¶ 100-03.  Because the plaintiff was an arrestee, and not a prisoner, at the time of the alleged use of excessive force, the Fourth Amendment, and not the Eighth Amendment, applies to this case.  *See Orr v. Marquis*, No. 3:18-CV-1908 (MPS), 2019 WL 161504, at *3 (D. Conn. Jan. 10, 2019).

"The Fourth Amendment's protection against unreasonable seizures prohibits the use of excessive force by [law enforcement] officers in arresting suspects."  *Orr v. Waterbury Police Dep't*, No. 3:17-CV-788 (VAB), 2018 WL 780218, at *5 (D. Conn. Feb. 8, 2018) (citing *Hemphill v. Scott*, 141 F. 3d 412, 416-17 (2d Cir. 1998)).  To state a Fourth Amendment claim for excessive force, the plaintiff must allege facts showing that the defendants' use of force was "objectively unreasonable."  *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  The "reasonableness" of the use of force must be judged from the perspective of a reasonable officer on the scene.  *Id.* (citing *Graham*, 490 U.S. at 396).  It "requires consideration of the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight."  *Id.* (quoting *Hemphill*, 141 F.3d at 417).

When the plaintiff's complaint is construed liberally, he has stated a plausible Fourth Amendment excessive force claim against the arresting officers.  All four officers

were engaged in the pursuit of the plaintiff throughout the streets of New Haven, during which many of them allegedly crashed into the plaintiff and caused him to drive into oncoming traffic lanes, and Murcko allegedly grabbed the plaintiff's testicles during a pat down search after he had been placed in handcuffs. These allegations are sufficient to permit the excessive force claim to proceed against these defendants at this time.

B. Retaliation

The plaintiff next claims that Lopez retaliated against him for electing a trial on his 2014 criminal case and dating his ex-girlfriend by targeting his arrest on April 22, 2016. *See* ECF No. 1, ¶ 104. He claims that such retaliation violated his First Amendment right to free speech. *See id.*

To prevail on a free speech claim, the plaintiff must show "(1) that the speech or conduct at issue is protected under the First Amendment, (2) that the defendant[] took adverse action against [him], (3) that there was a causal connection between he protected speech or conduct and the adverse action, and (4) that the defendant['s] actions chilled the exercise of that right." *Marczeski v. Gavitt*, 354 F. Supp. 2d 190, 194 (D. Conn. 2005); *see also Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). He must allege facts which would support an inference that the defendants "harbored retaliatory intent." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999). However, the existence of probable cause is a complete defense to a claim of retaliatory arrest. *Golodner v. City of New London*, 443 F. App'x 622, 624 (2d Cir. 2011).

Certainly, electing a trial on criminal charges is a constitutionally protected interest. *See Marczeski*, 354 F. Supp. 2d at 194. However, the allegations do not sufficiently show a causal connection between the plaintiff's 2014 criminal case and the

9

2016 arrest. Even if Lopez had directed the investigation and arrest of the plaintiff in 2016, the claim that he was "targeting" the plaintiff because of the 2014 criminal case is entirely speculative. As for the plaintiff's other basis for retaliation, dating Lopez's ex-girlfriend is not a constitutionally protected activity. Moreover, even if the plaintiff's allegations had established a causal connection, his arrest on April 22, 2016 resulted in both a narcotics conviction and a conviction with interfering with an officer by way of guilty plea. Therefore, by his own admission in state court, probable cause existed for his 2016 arrest. *See Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999) (guilty plea bars claim of arrest without probable cause). Based on the foregoing, the First Amendment claim is dismissed.

    C.  <u>Remaining Constitutional Claims</u>

The plaintiff's remaining constitutional claims essentially challenge the defendants' failure to investigate and report accurately the events of April 22, 2016, which led to his arrest and convictions, and the civilian complaints he filed with the NHPD, which were both dismissed. *See* ECF No. 1, ¶¶ 105-08. These claims are subject to dismissal for the following reasons.

In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the United States Supreme Court held that where a judgment in favor of a plaintiff would necessarily implicate the validity of his conviction or length of sentence, a cause of action under § 1983 is not cognizable unless the plaintiff can show that his underlying "conviction or sentence had been reversed on direct appeal, declared invalid by a state tribunal authorized to make such a determination, or called into question by the issuance of a federal writ of habeas corpus." *See also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (state prisoner's § 1983 action is

barred no matter relief sought, no matter the target of prisoner's suit, if success in action would necessarily demonstrate invalidity of conviction or duration). If the plaintiff in this case were to prevail on his claims that the defendants failed to accurately report the events leading up to his arrest and/or preserve any relevant video surveillance footage from the pursuit, the judgment would necessarily implicate the validity of his guilty plea to interfering with an officer, which according to the state judicial record, stemmed from his conduct on April 22, 2016, the date of his arrest.

Although the plaintiff frames his claims as violations of due process and equal protection of the laws, he is essentially claiming that his arrest and subsequent prosecution were based on false statements made by the defendants and their failure to procure evidence in support of his defense. Claims of false arrest and malicious prosecution both require a showing that the criminal proceedings that ensued terminated in the plaintiff's favor. *See Rodriguez v. Patterson*, No. 3:04-CV-25 (MRK), 2006 WL 1272620, at *1 (D. Conn. Apr. 5, 2006). Therefore, any claim against the defendants' investigation and prosecution of the plaintiff's April 22, 2016 arrest cannot proceed.[1]

Similarly, the plaintiff's claims challenging the failure of the defendants to properly investigate his civilian complaints filed with the NHPD are not cognizable. This Court has previously held that there is no constitutional right to an adequate investigation or "after-the-fact punishment" by police officials. *See Santossio v. City of Bridgeport*, No. 3:01-CV-1460 (RNC), 2004 WL 2381559, at *4 (D. Conn. Sept. 28, 2004); *see also Appletree v. City of Hartford*, 555 F. Supp. 224, 227 (D. Conn. 1983) (rejecting

---

[1] The plaintiff remains free, of course, to challenge the accuracy of the police report, and to pursue any theory of a cover-up, in connection with his excessive force claim.

plaintiff's claim that police departments' civilian complaint policy violates constitutional rights). Therefore, to the extent the plaintiff is raising separate constitutional claims against Murcko, Galvan, Monk, Lopez, Maher, Dell, Maldonado, and Cain based on their failure to properly investigate his civilian complaints, those claims are dismissed.

> D. <u>Claims against the City of New Haven, the NHPD, the State's Attorney's Office, the Supervisory Defendants, and the Individual Defendants in their Official Capacities</u>

The plaintiff is also suing the City of New Haven, the NHPD, the New Haven States' Attorney's Office, the Chief of Police, and Detective Lopez, who allegedly directed his arrest, under a supervisory liability theory. He also indicates that he is suing all of the individual defendants in their official capacities. (ECF No. 1 at ¶ 16.) After review of the allegations, the Court concludes that all of these claims except the supervisory liability claim against Detective Lopez cannot proceed.

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978). To prevail on a claim against a municipality under § 1983 based on the actions of a public official, the plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). The same standard applies to claims against police officers and other municipal employees sued in their official capacities. *See, e.g.*,

*Duartes v. Cty. of Nassau*, No. 07CV2929JSWDW, 2008 WL 11449235, at *4 (E.D.N.Y. Sept. 30, 2008) ("A Section 1983 suit against a police officer in his official capacity is the equivalent of an action against the municipality itself.").

Here, the plaintiff has not alleged any facts suggesting that the conduct of the NHPD officers was related to any policy, custom, or practice established or implemented by the City of New Haven. The fact that some of the individual defendants may have violated his Fourth Amendment protection against excessive force is insufficient to state a claim for municipal liability against the city. *See Roe*, 542 F.3d at 36 (quoting *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 405 (1997)). Similarly, he cannot state a claim against the NHPD, which is essentially the same as a claim against the municipality it represents; s*ee Knighton v. City of Syracuse Fire Dept.*, 145 F. Supp. 2d 217, 222 n.7 (N.D.NY. 2001); or against the individual police officers in their official capacities. *See Cane v. New Britain Police Dep't*, No. 3:16-CV-1638 (SRU), 2017 WL 752278, at *3 (D. Conn. Feb. 27, 2017). As for his claims against the State's Attorney's Office, the plaintiff is essentially suing the State of Connecticut, against which he cannot recover damages. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (state agency not a person within meaning of § 1983). Therefore, the claims against the City of New Haven, the NHPD, the individual defendants in their official capacities, and the New Haven State's Attorney's Office are dismissed.

To the extent the plaintiff is suing Chief Campbell under a supervisory liability theory for the excessive force used against him on April 22, 2016, his claim fails. A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of five ways:

13

(1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Here, the plaintiff does not allege sufficient facts showing that Chief Campbell participated in, directed, or even knew about the amount of force used against him on April 22, 2016.

However, plaintiff does adequately allege that Detective Lopez was personally involved in the excessive force used against him on April 22, 2016. Although the allegations are thin, they plausibly allege that Lopez directly participated in the deprivation of plaintiff's rights. In particular, plaintiff alleges that Lopez "illegally sent" Murcko, Galvan, and Monk to "attac[k]" the plaintiff. (ECF No. 1 at ¶ 75.) While this conclusory allegation might not pass muster on its own, it is supported by others indicating that Lopez had a motive to encourage or direct the arresting defendants to use excessive force on his behalf (*see id.* ¶ 76 ("[Lopez] knew he couldn't do it him self because of the pending jury trial. . .")) and that the arresting defendants told each other to report back to Lopez after the incident. (*Id.* at ¶ 67 ("Galvan . . . shout[ed] [to Murcko] 'call' 'Lopez' tell him we got him. . .").) The complaint thus supports an inference that Lopez not only was aware of the April 22, 2016 incident but affirmatively directed the arresting defendants to use excessive force on plaintiff, and so adequately alleges Lopez' personal involvement in the use of excessive force on plaintiff. *See Elek v. Inc. Vill. of*

*Monroe*, 815 F. Supp. 2d 801, 807 (S.D.N.Y. 2011) (concluding that plaintiff's allegation that supervisory defendant directed the officers to arrest plaintiff was sufficient to show personal involvement, but dismissing the supervisory liability claim for failing to adequately allege an underlying constitutional violation).

Therefore, while plaintiff's supervisory liability claim against Chief Campbell is dismissed as factually insufficient, his claim against Detective Lopez may proceed.

E. <u>Declaratory and Injunctive Relief</u>

In addition to damages, the plaintiff seeks a declaration that the defendants violated his constitutional rights and injunctive relief in the form of an order for the defendants to "cease their physical violence and retaliation towards [him]." *See* ECF No. 1, ¶¶ 110-11. Neither of these requests are cognizable.

Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of that right or a disturbance of the relationship." *Colabella v. American Institute of Certified Public Accountants*, No. 10-CV-2291 (KAM) (ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citations omitted). Declaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages. *See In re Combustion Equip. Assoc., Inc.*, 838 F.3d 35, 37 (2d Cir. 1998). In this case, the plaintiff's request for declaratory relief concerns only past actions (i.e., the conduct of the police officers on the night of his arrest). He has not identified any legal relationships or issues that require resolution by declaratory relief. *See Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000) (Eleventh Amendment bars declaration that state violated federal law in the past). Therefore, his request for declaratory relief is dismissed.

As for his injunctive relief request, "an injunction [must] be 'more specific than a simple command that the defendant[s] obey the law.'" *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 620 (S.D.N.Y. 2018) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011)). The plaintiff has not alleged that the defendants are currently subjecting him to ongoing excessive force. Therefore, the request for injunctive relief is also dismissed.

**ORDERS**

(1) The plaintiff's Fourth Amendment claim for excessive force may proceed against Murcko, Galvan, Monk, and Maher in their individual capacities for damages, as may the claim for supervisory liability against Detective Lopez. All other claims are dismissed. The clerk is directed to terminate the remaining defendants.

(2) Within **twenty-one (21) days** from the date of this Order, Clerk shall mail a waiver of service of process request packet containing the complaint (ECF No. 1) and this Order to Murcko, Galvan, Monk, Maher, and Lopez at the New Haven Police Department, 1 Union Avenue, New Haven, CT 06519. The Clerk shall report to the Court on the status of the waiver requests on the **thirty-fifth (35th) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him and he shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, according to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(5) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(6) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify the defendants or defense counsel of his new address.

It is so ordered.

Dated at Hartford, Connecticut this 23rd day of May 2019.

                                      /s/
                                      Michael P. Shea
                                      United States District Judge